UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**IN RE:**
**J. H. INVESTMENT SERVICES, INC.**

**UNITED STATES OF AMERICA,**

 **Appellant,**

**v.**              **Case No. 8:10-cv-1394-T-JSM**

**STEVEN OSCHER, Chapter 11 Trustee,**

 **Trustee/Appellee.**
_____/

## ORDER

This is an appeal by the Internal Revenue Service ("IRS") from two Orders of the Bankruptcy Court:

(1) Order on Motion to Determine Entitlement to Carve Out Fund entered on April 28, 2010; and

(2) Order Confirming Liquidating Chapter 11 Plan Proposed by the Chapter 11 Trustee and Setting Post-Confirmation Status Conference entered on May 14, 2010.

The two Orders disallowed the IRS's asserted priority claim. This Court has jurisdiction pursuant to 28 U.S.C. § 158 (2004). After considering the briefs of the parties, and hearing oral argument on September 30, 2010, the Court determines that the Bankruptcy Court Orders should be affirmed.

## STANDARD OF REVIEW

This Court reviews the Bankruptcy Court's factual findings under a clearly erroneous standard and the Bankruptcy Court's conclusions of law *de novo*.

## BACKGROUND

J. H. Investment Services, Inc. ("JHIS"), a Florida corporation, was involved in the ownership of commercial real properties, investment lending, and tax preparation.  Daniel Prewett ("Prewett") was the primary individual operating JHIS.  The real estate operations of JHIS involved joint ventures promising investors large returns on their investments. Generally, JHIS held title to the joint venture properties.

The real estate investment operation did business for over ten years.  The promises of large returns turned out to be a real estate scam orchestrated by Prewett through JHIS and other related entities.  Investors eventually learned of the true nature of JHIS and over 25 state court lawsuits were filed against Prewett and his various entities.

In 2006, Prewett was arrested for money laundering and drug trafficking.  He transferred properties from JHIS to himself personally to pledge as bail.  After posting bail, Prewett fled to Italy, but the government was able to extradite him to the United States.  He was convicted by a jury in 2008 and is now in federal prison.

In May of 2007, creditors initiated a Chapter 11 bankruptcy proceeding against JHIS and Prewett.  The Bankruptcy Court appointed Steven S. Oscher as trustee and set December 1, 2009, as the deadline for creditors to file proofs of claim.

The trustee was able to locate approximately 40 properties that he could potentially sell. Many of the properties were mortgaged. The trustee, working with creditors, submitted a plan to the Bankruptcy Court to sell the properties at auction.

At a hearing on the trustee's motion to approve the sale, the Bankruptcy Court ordered that one percent (1%) of the buyer's premium would be dedicated to the unsecured creditors (the "Carve Out Fund"). The Order provided that each lien would attach to the proceeds of the sale of its respective property, and the extent and validity of the lien would be determined by the Bankruptcy Court after the auction. Secured creditors claiming an interest in the auction proceeds were required to file a motion with the Bankruptcy Court setting forth the amount of their claimed entitlement. The IRS received notice of this requirement, but failed to file any timely response claiming an interest in the auction proceeds.

Neither the trustee nor the IRS was ever entirely certain of what properties would be finally recovered given the nature of the fraud involved. For that reason, the IRS had difficulty determining what portion of its claim was secured and amended its claim several times.

The IRS's claims were for unpaid corporate income taxes, interest and penalties. These unpaid corporate income taxes, which totaled approximately $24,000,000, were for the four calendar years that ended before the petition date - 2003, 2004, 2005, and 2006 - and had been assessed against the debtor at least seven days before the petition date. The IRS's claims were filed as follows:

| **Claim** | **Date Filed** | **Total Claim** | **Secured** | **Priority** | **General Unsecured** |
|---|---|---|---|---|---|
| 6-1 | 5/25/07 | $46,442,278.37 | Not listed | $26,224,568.90 | $20,217,709.47 |
| 6-2 | 5/26/08 | $46,262,336.33 | Not listed | $26,103,415.95 | $20,138,920.00 |
| 6-3 | 9/17/08 | $46,402,259.23 | $764.93 | $26,195,424.36 | $20,206,069.94 |
| 6-4 | 11/17/09 | $46,795,402.56 | $46,795,402.56 | Not listed | Not listed |

The last amended claim, 6-4, was timely filed before the December 1, 2009, bar date.

The trustee objected to claim 6-3 contending the claim: (1) referred to multiple tax payer identification numbers, (2) failed to take into consideration that JHIS lost money for the tax periods it did not file a tax return, and (3) failed to deduct expenses for the applicable tax periods. The IRS amended claim 6-3 by filing claim 6-4 for $46,795,402.56, all categorized as secured. Claim 6-4 makes no reference to an unsecured priority claim or a general unsecured claim. The trustee then withdrew his objection to the IRS claim.

The trustee formulated a liquidating plan and in December of 2009, filed the Trustee's Chapter 11 Amended Plan for J. H. Investment Services, Inc. ("Amended Plan"). The Amended Plan proposed to satisfy the secured claim of the IRS by transferring any remaining real property to the IRS and distributing the "net plan fund" at the termination of the "plan fund." It further provided for distribution of the Carve Out Fund to the general unsecured creditors. All remaining funds and collateral were to be distributed to the IRS.

The IRS objected to the Amended Plan because it made no provision for payment of its unsecured priority claim even though its claim 6-4 did not assert an unsecured priority claim. The IRS argued that the Amended Plan did not satisfy 11 U.S.C. § 1129(a)(9)(C)

because the Carve Out Fund was set aside for unsecured claims and not unsecured priority claims.

A confirmation hearing was held on February 11, 2010. The Bankruptcy Court directed the parties to file pleadings setting forth their positions with respect to the IRS objection. In response, the trustee filed a Motion to Determine Entitlement to Carve Out Fund (Carve Out Motion). The trustee argued that the Carve Out Fund was designated for general unsecured claims, not unsecured priority claims. The IRS filed a reply to the Carve Out Motion, but did not file a motion to value its collateral pursuant to 11 U.S.C. § 506 or seek an equitable extension of the claims' bar date to amend its claim to assert an unsecured priority claim.

The Bankruptcy Court held a second confirmation hearing on April 5, 2010, and ruled that the IRS was not entitled to an unsecured priority claim. It reserved ruling as to whether the IRS was entitled to a general unsecured claim.

After the confirmation hearing, the trustee acknowledged that the IRS had an allowed secured claim of $46,800,000. He offered to pay $147,888.00 in cash to the IRS, as opposed to turning over the properties, in full satisfaction of the IRS's secured claim. The IRS accepted, voted in favor of the Amended Plan, and preserved its objection concerning whether it had an unsecured priority claim. The Bankruptcy Court overruled the IRS's objection.

On April 28, 2010, the Bankruptcy Court entered an Order on Motion to Determine Entitlement to Carve Out Fund. On May 10, 2010, the Bankruptcy Court entered its Order

Confirming Liquidating Chapter 11 Plan Proposed by the Chapter 11 Trustee and Setting Post-Confirmation Status Conference ("Confirmation Order"). The IRS timely appealed both Orders.

## **DISCUSSION**

The IRS contends that it was not required to bifurcate its claim between secured and unsecured portions. It argues that, pursuant to 11 U.S.C. § 506(a), its claim, by operation of law, becomes an unsecured claim to the extent that it exceeds the value of the collateral securing the claim. Its position is that the trustee is in a better position to know the value of the collateral, and the trustee and all other creditors should be aware that the IRS's claim will be an unsecured claim to the extent the collateral is not sufficient to satisfy it. 11 U.S.C. § 506(a) provides, in pertinent part:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

And the IRS contends that this automatically unsecured portion of its claim is entitled to priority pursuant to § 507(a)(8) which grants priority to allowed claims for income taxes assessed against the debtor shortly before the bankruptcy.

The trustee argues that, in formulating the liquidating plan, he is entitled to rely on the proof of claims filed by each creditor. He contends it is not his job to determine what each creditor could claim, only to ascertain what they have claimed, and make appropriate

provision in the plan. Rather, it is the creditor's responsibility to state what he is claiming and the trustee may object, if he disagrees with the claim, or accept it.

The trustee's position is the more compelling. The bankruptcy system is geared toward developing a plan for appropriate payment to the creditors and release of the debtor. Creditors set forth what they claim to be owed and mechanisms are in place for the Bankruptcy Court to resolve any disputes.

The filing of a proof of claim serves a due process function, it puts other parties in interest on notice of a claim. A proof of claim that is timely filed and not objected to by a party in interest is deemed allowed. 11 U.S.C. § 502(a). Such a proof of claim constitutes *prima facie* evidence of the validity and amount of the claim. Fed.R.Bankr.P. 3001(f). It is a trustee's duty to "examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. § 704(5). As the court stated in *In Re: Padget*, 119 B.R. 793, 798 (Bankr. D. Co. 1990):

> It is not a trustee's duty to protect individual creditors against the consequences of failing to file a claim, filing a late claim, filing an insufficient claim, or failing to properly assert a deficiency claim. It is a trustee's principal duty to object to unsubstantiated, excessive, or unallowable claims.

An objection by the trustee, or a competing creditor, frames the issue of a contested matter. Contested matters are litigated and resolved by the Bankruptcy Court. A secured creditor that deems itself to be under secured may self-value by filing a bifurcated claim, or otherwise place interested parties on notice that more than a secured claim may be forthcoming. If any party in interest disputes the valuation, that party may seek to have the collateral valued under Bankruptcy Rule 3012. If there is no objection to a proof of claim,

it is deemed allowed and a plan must deal with it appropriately. If the plan does not deal with it appropriately under the Bankruptcy Code, once again an objection may be made and resolved by the Bankruptcy Court. Once the plan is accepted and confirmed by the Bankruptcy Court, that confirmation order is *res judicata*.

The IRS's position of automatic bifurcation of a secured claim is not a new one. Indeed, the IRS has argued this position before and lost. *In Re: Envirocon International Corp.*, 214 B.R. 251 (M.D. Fla. 1997). In *In Re: Envirocon International Corp.*, the Bankruptcy Court held that the IRS was not entitled to participate in the distribution of assets of a Chapter 7 estate because of its failure to move for valuation of its collateral after filing a proof of claim denominated only as a secured claim. The court affirmed the Bankruptcy Court and held that by characterizing the entire claim as secured, it forfeited any right to later participate as an unsecured creditor.

Although the Court agrees with the ultimate holding in *In Re: Envirocon International Corp.* that the IRS must give notice of an unsecured claim, the Court does not agree with the court's reasoning to the extent it held the IRS "forfeited" any right to later participate as an unsecured creditor. This is not an issue of forfeiture, but one of due process. If the IRS had filed a proof of claim as to an unsecured claim, the trustee and any other parties would have been placed on notice of the unsecured claim and, thus, have been provided with an opportunity to object. Having not filed an unsecured claim in this case, the trustee was not provided with any opportunity to object. And it is not the trustee's duty to protect individual creditors against the consequences of failing to file a claim. Accordingly, in light of these

due process requirements, the IRS's argument that it was not required to bifurcate its claim between secured and unsecured portions must fail. *See also In Re: Padget*, 119 B.R. 793 (Bankr. D.Col. 1990) (holding that an "undersecured creditor in a Chapter 7 case who files a claim denoted a secured claim must timely file an amended, or supplemental claim, for its unsecured claim-or give other legally sufficient notice of such claim to the trustee-if it desires to be treated as an unsecured creditor by the trustee").

## **CONCLUSION**

This Court will affirm the two Orders of the Bankruptcy Court which determined that the IRS did not have a priority unsecured claim. The Court reaches this conclusion by first deciding that the IRS does not have an unsecured claim of any type. With no unsecured claim, the IRS cannot claim priority status.

It is therefore ORDERED AND ADJUDGED that:

1. The Orders of the Bankruptcy Court are AFFIRMED.

2. The Clerk is directed to enter Judgment in favor of Appellee and close this case.

**DONE** and **ORDERED** in Tampa, Florida on October 7, 2010.

*[signature]*
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2010\10-cv-1394.bk appeal-revised.wpd